Dennis J. Beck vs. Clarence F. Doore.

Middlesex.    May 10, 1946. — June 5, 1946.

Present: Field, C.J., Lummus, Dolan, Ronan, & Wilkins, JJ.

*Contract*, Construction, Performance and breach, For sale of real estate.

There is no implication of law that, in the absence of specification of the place for the passing of papers in a contract for the sale of land, papers are to be passed at the appropriate registry of deeds.

Evidence at the trial of an action for return of a deposit made by one contracting to purchase real estate, in effect that the defendant was present at a place that had been agreed upon between the parties for passing papers and had remained constantly ready to perform the contract even after the plaintiff failed to appear at that place, and that the plaintiff never had chosen to test the defendant's ability and willingness to perform by himself tendering performance and demanding a conveyance, required a finding for the defendant.

Contract. Writ in the Superior Court dated October 18, 1941.

The case was tried before *Collins*, J.

*J. F. Thistle*, for the plaintiff.

*W. F. Porter*, (*J. J. Butler* with him,) for the defendant.

Lummus, J. The plaintiff, the vendee in a written contract for the sale of land in Lynnfield, obtained a verdict for $2,292.14 in an action of contract to recover a deposit of $2,000 paid under the contract. But the judge, under leave reserved (G. L. [Ter. Ed.] c. 231, § 120), entered a verdict for the defendant, and reported the case.

The evidence most favorable to the plaintiff was as follows: The contract was signed on or about August 1, 1941, and was to be performed "on or before the first day of October, 1941." The price was to be $8,000, of which $2,000 was paid upon the signing of the contract, and the remainder was to be paid on the delivery of the deed. When the contract was signed the defendant gave the key to the building on the premises to the plaintiff, who stored some property there.

The premises were subject to a mortgage of about $2,000 held by the Wakefield Savings Bank, which would have to be paid off and discharged in order to clear the title. After the contract was signed, the defendant signed the necessary instruments and moved to Maine, leaving the completion of the transaction in the hands of his .attorney, Nelson B. Todd, Esq. On September 3, 1941, the plaintiff wrote the defendant that the town officials of Lynnfield had refused to grant a permit to keep mink on the premises and asked the defendant to meet him and "talk it over," as "my only means of paying for that place is with proceeds from the mink." Nothing was done to rescind or vary the contract.

On September 29, 1941, Mr. Todd wrote the plaintiff, saying "I shall be at the Wakefield Savings Bank of Wakefield, Mass., at 9 o'clock on October 1st, prepared to transfer the papers. Please have with you the following certified checks:

| | |
|---|---|
| To the order of Wakefield Savings Bank | $2060.00 |
| To the order of Clarence F. Dorre [*sic*] Guardian | 1485.00 |
| To the order of Clarence F. Dorre [*sic*] | 4455.00." |

The total of those checks was $8,000, whereas $2,000 had already been paid, and only $6,000 remained due. On September 30, 1941, Mr.. Todd corrected this error by a telegram to the plaintiff, saying "In making payment and taking title Lynnfield real estate tomorrow you should take credit for two thousand dollars previously paid and check to Doore personally should be adjusted accordingly." Mr. Todd testified that if the plaintiff should have objected to the use of the purchase money to pay off the mortgage (see *Greenberg* v. *Lannigan*, 263 Mass. 594), he, Mr. Todd, would have advanced his own funds for the purpose. On October 1, 1941, at 9 A.M. Mr. Todd was at the Wakefield Savings Bank, prepared to pass the title, and remained there not less than half an hour, but received no word from the plaintiff. When Mr. Todd left, he asked the cashier of the bank to telephone him if the plaintiff should appear. The plaintiff never appeared.

The plaintiff testified that the defendant "suggested passing papers at Wakefield Savings Bank and that he agreed to it to a certain extent." There was no evidence that the plaintiff's agreement to that effect ever was withdrawn. The plaintiff testified that "at the time he received the letter [of September 29, 1941] from Attorney Todd he intended to go through with the deal because otherwise he would lose his" $2,000. The plaintiff's attorney testified that the plaintiff handed him that letter and the telegram of the next day as soon as they were received, whereupon the attorney advised the plaintiff not to be at the bank in accordance with that letter, but to be at the registry of deeds instead, prepared to take title, because in the absence of specification in the contract the attorney "believed from long established custom in order to check the records up to the minute of passing papers that the proper place to pass papers was at the registry of deeds." He conceded that he gave no notice to Mr. Todd of his decision to go to the registry instead of the bank "anticipating that arrangements had been made by his client." Yet when on October 1, 1941, he went to the registry of deeds and failed to find Mr. Todd, it did not appear that he asked his client, the plaintiff, what notice he had given Mr. Todd, and it did appear that his client had given Mr. Todd no notice. After waiting at the registry of deeds for about an hour, the plaintiff's attorney went with his client to a telegraph office and caused his client to send the following telegram to Mr. Todd: "Waited registry of deed to complete Clarence Dorre [*sic*] transfer. Consult my attorney . . . future arrangements."

On October 1, 1941, Mr. Todd wrote to the plaintiff, expressing regret that there had been a failure to transfer title, and expressing a desire to do so in the near future. On October 4, 1941, the plaintiff's attorney wrote to Mr. Todd, saying "Dennis J. Beck of North Reading has consulted me in reference to his agreement with Clarence F. Dorre [*sic*], relative to the sale of the real estate in Lynnfield. I have given the matter careful consideration, and my opinion is that there have been several breaches in the

agreement by the prospective sellers. Therefore, Mr. Beck has instructed me to request the return of the $2000 deposit." On October 6, 1941, Mr. Todd replied, denying any breach and expressing a desire to perform the contract. On October 27, 1941, Mr. Todd wrote again to the plaintiff's attorney, expressing a desire to perform the contract. Neither of these letters was answered, but on October 18, 1941, this action was commenced.

The attorney for the plaintiff had no support in law for his position that in the absence of specification of the place for passing title the law implied that the title would be passed at the registry of deeds. Passing titles there is convenient and common, but not implied by law. In the present case the parties had agreed that title should be passed at the Wakefield Savings Bank, and the defendant's attorney had never been notified that that place was unsatisfactory to the plaintiff. He had every reason to expect to find the plaintiff there, ready to take title. After the plaintiff failed to appear, the defendant's attorney remained constantly ready to perform the contract. The plaintiff never chose to test the defendant's ability and willingness to perform by tendering performance and demanding a conveyance. *Hunt* v. *Bassett,* 269 Mass. 298, 302. *Rigs* v. *Sokol,* 318 Mass. 337, 344. Even if the plaintiff was not seeking an excuse to escape from his bargain, he shows no default on the part of the defendant and no right to recover his deposit. *Smith* v. *Greene,* 197 Mass. 16, 18. *Sleeper* v. *Nicholson,* 201 Mass. 110. *King* v. *Milliken,* 248 Mass. 460, 463. *Chertok* v. *Kassabian,* 255 Mass. 265. *Schon* v. *Odd Fellows Building Association,* 255 Mass. 465, 469. *Cobb* v. *Library Bureau,* 268 Mass. 311, 317. *Lishner* v. *Bleich, ante,* 350.

*Judgment for the defendant.* [1]

---

[1] By reason of this decision, the defendant's exceptions become of no importance, and are treated as waived.