Sherman, P J.
This is an action to recover, inter alia, the $7,000.00 deposit paid by the plaintiffs as prospective purchasers of the defendant’s real estate.
Judgment was entered for the plaintiffs in the amount of $7,000.00, and the sole issue presented by the defendant’s appeal is the propriety of the plaintiffs’ recovery of their purchase deposit. Both parties have waived all other claims.
The report indicates that the parties entered into a purchase and sale agreement which had been drafted by the plaintiffs’ attorney. Under the terms of the agreement, the plaintiffs gave the defendant a purchase deposit in the amount of $7,000.00. The agreement provided that “[i]f the BUYER shall fail to fulfill agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages and this shall be SELLER’S sale [sic] and exclusive remedy.”The agreement also provided that:
[I]f the SELLER shall be unable to give title orto make conveyance... any payments made under this agreement shall be forthwith refunded... unless the SELLER elects to use reasonable efforts to remove any defects in title. .. in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty days [emphasis supplied].
The parties’ purchase and sale agreement did not contain any “mortgage contingency clause” or other provision excusing the plaintiffs’ performance if they were unable to secure financing.
It was uncontroverted that the plaintiffs were in fact unable to obtain a mortgage and that they had kept the defendant informed of their unsuccessful financing efforts on an almost daily basis right up to the closing date, which had been extended to July 31, 1990 at the plaintiffs request. No closing took place on that date.
In November, 1990, the defendant sold the subject property to a third party. At that time, it was discovered that the Commonwealth of Massachusetts held an estate tax lien on the property. This lien had existed prior to July 31, 1990, the date which had been set for closing between the plaintiffs and defendant. The plaintiffs contend that the defendant would have been unable to convey the property on July 31, 1990 because of the estate tax lien, and that the parties’ agreement was thus voided by the breach of both parties so as to entitle the plaintiffs to the return of their deposit.
The defendant now claims to be aggrieved by inconsistencies in the court’s findings of fact and rulings of law, including the courf s disposition of defendanf s request for ruling number 3. Request number 3 is divided into the following two parts:
To recover their deposit, the Bennetts must sustain the burden of proving *243 breach of the purchase and sale agreement by Mr. Pearless.
Asamatteroflaw,ifMr.Pearlessisnotin defaultwith [sic] the purchase and sale agreement, the Bennetts cannot recover their deposit.
The court allowed both of these requests as correct statements of law, but added that they were “not so found as a fact.” However, the court found as a fact that:
Both the plaintiffs and the defendant breached the purchase and sale agreement in that neither side was ready, willing and able to perform at the designated date and time.The plaintiffs did not have the funds required, and the defendant could not convey a clear, unclouded title. Therefore, the deal was mutually voided and the plaintiffs are entitled to have their deposit of $7,000.00 returned [emphasis supplied].
We concur with the defendant that the court’s rulings and findings were both inconsistent and erroneous. The courf s judgment for the plaintiffs must be reversed.
The trial court expressly found on the basis of undisputed evidence that the plaintiffs breached the parties’ purchase and sale agreement by failing to tender the purchase price at the time set for closing. Given such finding, any recovery by the plaintiffs of their purchase deposit in this action necessarily depended upon a proper factual determination that the defendant had also breached the agreement by his inability or refusal to perform, or conduct equivalent thereto. Hapgood v. Shaw, 105 Mass. 276 (1870). Relying on the general rule that “when performance under a contract is concurrent, one party cannot put the other in default unless he is ready, able and willing to perform and has manifested this by some offer of performance,” Leigh v. Rule, 331 Mass. 664, 668 (1954), the plaintiffs argue that the existing estate tax lien rendered the defendant unable to convey clear title to the property in performance of his contractual obligations.
The plaintiffs’ reliance on Leigh v. Rule, supra at 668 is, however, misplaced. The purchase and saleagreement executed by the partieshereindidnotcallfor“concurrent performance.” The agreement instead enabled the defendant-seller, in the event he was unable to give clear title on the closing date, to extend the time for performance by thirty (30) days in order to cure any defects in title. The existence of the estate tax lien on the property on July 31, 1990 did not, therefore, render the defendant unable to perform or constitute any breach of the purchase and sale agreement by the defendant.
Moreover, even if the defendant had been aware of the lien, hewould nothavebeen required to discharge it in order to “manifest.. some offer of performance”, Id. at 668, sufficient to establish the plaintiffs’ default as the cause of the transaction’s failure and his ensuing right to retain the plaintiffs’ deposit as liquidated damages. A seller is not obligated to clear encumbrances once it becomes obvious that the buyer does not intend to perform because of an inability to tender the purchase price. Karil v. Minot Light, Inc., 30 Mass. App. Ct. 166, 168 (1991); Hannah v. Tobin, 33 Mass. App. Dec. 119, 124-125 (1965). The seller is so excused from any preparation for, or actual tender of, performance under the general rule that:
[a] renunciation of the agreement, by declarations or inconsistent conduct, before the time of performance, may give cause for treating it as rescinded, and excuse the other party from making ready for performance on his part, or relieve him from the necessity of offering performance in order to enforce his rights.
Daniels v. Newton, 114 Mass. 530, 533 (1874). In the instant case, the plaintiffs repeatedly stated to the defendant, up to the date setfor closing, that they were unable to secure financing and thus to perform their contractual obligation to tender the purchase price. Such declarations excused the defendant from any tender of performance. In this regard, Leigh v. Rule lends added support to the defendant’s position.
[O]ne seeking to put the other party in default must show that he has offered to perform or has given notice of his readiness to do so ‘unless excused from performance... by the refusal of the other party to perform, *244 or some conduct equivalent to a refusal.’
Id. at 668, quoting Hapgood v. Shaw, supra at 279. Greenberg v. Lannigan, 263 Mass. 594 (1928), cited by the plaintiffs, is clearly distinguishable from the instant case.
As the plaintiffs’ refusal to purchase the defendanf s property was unqualified and based solely on their lack of financing, they cannot now complain of any defect in the title or question the defendanf s ability or willingness to cure the same. Sullivan v. F. E. Alteaux & Co., 284 Mass. 515, 520-521 (1933). The defendant was, in any event, entitled on the day set for closing to a thirty day extension to discharge the estate tax lien, and the plaintiffs have failed to establish that the defendantwas not ready, willing and able to perform. The defendant was entitled to retain the plaintiffs’ purchase deposit as liquidated damages for their breach of the parties’ purchase and sale agreement.
The trial courf s judgment for the plaintiffs is hereby reversed, and judgment is to be entered for the defendant. So ordered.